**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

**CIVIL CASE NO. 3:07cv062**

| | | |
|---|---|---|
| **LINCOLN FINANCIAL MEDIA COMPANY,** | ) ) ) | |
| **Plaintiff,** | ) ) | **MEMORANDUM OF DECISION** |
| **vs.** | ) | **AND ORDER** |
| | ) ) | |
| **CBS BROADCASTING INC., f/k/a CBS, INC.,** | ) ) ) | |
| **Defendant.** | ) ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for

Summary Judgment [Doc. 18] and the Defendant's Cross-Motion for

Summary Judgment [Doc. 23].

**I.     Procedural History**

On February 6, 2007, the Plaintiff Lincoln Financial Media Company

("Lincoln Financial") instituted this action against CBS Broadcasting Inc.

f/k/a CBS, Inc. ("CBS"), alleging breach of contract and seeking a

declaratory judgment to the effect that the parties' contract remains in full

force and effect and that CBS is obligated to continue making annual promotional payments of $400,000 to Lincoln Financial pursuant to the parties' contract. [Complaint, Doc. 1]. Lincoln Financial filed an Amended Complaint [Doc. 5] on February 9, 2007 in order to correct certain typographical errors in the original Complaint [Doc. 1]. CBS filed an Answer [Doc. 14] to the Amended Complaint [Doc. 5] on March 30, 2007.

The parties are in agreement that this matter centers on differing interpretations of the parties' contract, and as such, should be a matter of law for the Court to decide. [Certification and Report of Initial Attorneys' Conference, Doc. 15]. Accordingly, the parties have agreed to file cross-motions for summary judgment on this legal issue and not to conduct discovery, unless and until the Court determined upon review of the motions for summary judgment that more factual information is needed to resolve the matter. [Id.]. Lincoln Financial filed its Motion for Summary Judgment [Doc. 18] on July 13, 2007. CBS filed its Cross-Motion for Summary Judgment [Doc. 23] on July 30, 2007. The matter has been fully briefed and is now ripe for disposition.

## II.     The Summary Judgment Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The burden of establishing that there is no genuine issue of material fact rests with the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, the Court must take all of the evidence submitted by the non-moving party as true, and must draw all reasonable inferences in the non-moving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).  To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor.  Anderson, 477 U.S. at 248, 106 S.Ct. at 2510.  The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law.  Id.

Once the moving party presents evidence sufficient to carry its burden under Rule 56, the non-moving party may not rest upon its pleadings, but must affirmatively set forth, by affidavits or otherwise, "specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  An entry of summary judgment is mandated if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322, 106 S.Ct. at 2552.  In reviewing the evidence, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251-52, 106 S.Ct. at 2512.

In the present case, the parties agree that there are no questions of material fact and that this case presents only a question of law regarding the construction of the parties' contract.

## III.   Factual Background

The parties do not dispute the following facts.  The Plaintiff Lincoln Financial is a North Carolina corporation engaged in radio and television broadcasting operations throughout the southeastern and western United

States.  [Amended Complaint, Doc. 5 at ¶¶ 1,3; Answer to Amended

Complaint, Doc. 14 at ¶¶ 1, 3].  Until April 2006, Lincoln Financial was

known as Jefferson-Pilot Communications Company ("JPCC") and was a

wholly-owned subsidiary of Jefferson-Pilot Corporation ("JP").  [Declaration

of Nelle E. Gustafsson ("Gustafsson Decl."), Doc. 21 at ¶¶ 4, 22].  Since

Plaintiff was known as Jefferson-Pilot Communications Company ("JPCC")

throughout most of the period relevant in this matter, Plaintiff will be

referred to repeatedly in this opinion as JPCC.

The Defendant CBS operates one of the largest radio and television

networks in the United States.  The Plaintiff and CBS have enjoyed a long-

standing business relationship whereby the Plaintiff broadcasts CBS

network programming on WBTV, a television station broadcasting out of

Charlotte, North Carolina, and WCSC-TV, broadcasting out of Charleston,

South Carolina.  [Amended Complaint, Doc. 5 at ¶ 11; Answer to Amended

Complaint, Doc. 14 at ¶ 11].

On April 23, 1996, CBS entered into an Affiliation Agreement with

JPCC on behalf of WBTV.  [Gustafsson Decl., Doc. 21 at ¶¶ 4, 5].  At that

time, JPCC held the assets of and broadcasting license for WBTV.  [Id.].

On the same day, CBS entered into a separate Affiliation Agreement with

WCSC, Inc., a subsidiary wholly owned by JPCC.  [Id.].  WCSC, Inc. held

the assets of and broadcasting license for the CBS-affiliated television

station WCSC-TV.  [Id.].

The Affiliation Agreements required CBS to provide network

television programming for broadcast for WBTV and WCSC-TV for a

period of fifteen years.  [Affiliation Agreements, Docs. 22 and 22-3,

Exs. B and C to Gustafsson Decl., Doc. 21].  Pursuant to Section 2 of the

Affiliation Agreements, CBS was also required to make monthly payments

to JPCC and WCSC, Inc. under a formula based largely on the network

programming shown by the stations during the period for which the

payments were made.  [Id. at Section 2].  Pursuant to Section 3(b) of the

Affiliation Agreements, the "Broadcaster" (defined as JPCC in the WBTV

Affiliation Agreement and WCSC, Inc. in the WCSC-TV Affiliation

Agreement) agreed to the following:

> Broadcaster shall notify CBS forthwith if any
> application is made to the Federal Communications
> Commission relating to a transfer of control of
> Broadcaster or the transfer of Broadcaster's license
> for [the] Affiliated Station.  In the event that CBS
> shall reasonably disapprove of the proposed
> transferee, CBS shall have the right to terminate
> this Agreement effective as of the effective date of
> any such transfer (except a transfer within the
> provisions of Section 73.3540(f) of the Federal

Communications Commission's present Rules and
Regulations) by giving Broadcaster notice thereof,
and of its reasons for disapproving of the proposed
transferee, within thirty days after the date on which
Broadcaster gives CBS notice of the making of
such application.

[Id. at Section 3(b)].

On the same date as both Affiliation Agreements, CBS and JPCC (on

behalf of both WBTV and WCSC-TV), entered into a Letter Agreement,

pursuant to which CBS agreed to make an annual promotional contribution

of $400,000 to JPCC for allocation between WBTV and WCSC-TV.  [Letter

Agreement, Doc. 22-5, Ex. D to Gustafsson Decl.].  Paragraph 5 of the

Letter Agreement states, in pertinent part, as follows:

CBS will make a promotional contribution to
Jefferson-Pilot of . . . $400,000 in each of Years 2-
15, to be allocated between WBTV and WCSC as
directed by Jefferson-Pilot . . . CBS will include
such amount in a lump sum payment (allocated
between the stations as directed by Jefferson-Pilot
in the following month's compensation checks, as
separately itemized entries.  **This paragraph shall
be of no further force and effect in the event that
Jefferson-Pilot assigns or transfers any interest
in either Station.**

[Letter Agreement, Doc. 22-5, Ex. D to Gustafsson Decl. at ¶ 5] (emphasis

added).  The Letter Agreement explicitly defines the term "Jefferson-Pilot"

as a reference to "Jefferson-Pilot Communications Company" (JPCC). [Letter Agreement, Doc. 22-5, Ex. D to Gustafsson Decl. at 1].

Six years later, in March 2002, JPCC incorporated a new wholly-owned subsidiary, Jefferson-Pilot Communications/WBTV, Inc. [Gustafsson Decl., Doc. 21 at ¶ 10; Articles of Incorporation for Jefferson-Pilot Communications/WBTV, Inc., Doc. 21-4, Ex. E to Gustafsson Decl.]. JPCC proposed to transfer ownership of and assign the broadcast license for WBTV to this newly-formed entity. [Gustafsson Decl., Doc. 21 at ¶ 10]. In a letter dated March 20, 2002, JPCC notified CBS of its proposal to transfer the assets of and assign the broadcast license and Affiliation Agreement for WBTV to the new entity. [March 20, 2002 Letter, Doc. 21-5, Ex. F to Gustafsson Decl.]. CBS and JPCC agreed that the proposed transaction was a pro forma assignment that did not require CBS approval under Section 3(b) of the WBTV Affiliation Agreement. Nevertheless, CBS indicated in a April 10, 2002 letter that it did not object to the proposed assignment. [April 10, 2002 Letter, Doc. 21-6, Ex. G to Gustafsson Decl.]. On August 22, 2002, JPCC received the consent of the Federal Communications Commission (FCC) to the assignment of WBTV's broadcast license to Jefferson-Pilot Communications/WBTV, Inc. [FCC

Consent to Assignment, Doc. 21-7, Ex. H to Gustafsson Decl.].  The

transaction was consummated on January 1, 2003, with the transfer of

ownership of WBTV and the assignment of WBTV's broadcast license and

CBS Affiliation Agreement to Jefferson-Pilot Communications/WBTV, Inc.

[Gustafsson Decl., Doc. 21 at ¶ 13].  This transfer and assignment was

confirmed in a letter to CBS dated January 2, 2003.  [Jan. 2, 2003 Letter,

Gustafsson Decl., Doc. 21, Ex. I].

On June 8, 2003, CBS made the $400,000 promotional payment to

JPCC in satisfaction of CBS's obligations under Paragraph 5 of the Letter

Agreement for the year 2003.  [Gustafsson Decl., Doc. 21 at ¶ 15].  On

June 6, 2004, CBS made the $400,000 promotional payment to JPCC in

satisfaction of CBS's obligations under Paragraph 5 of the Letter

Agreement for the year 2004.  [Id. at ¶ 16].  On October 2, 2005, CBS

made the $400,000 promotional payment to JPCC in satisfaction of CBS's

obligations under Paragraph 5 of the Letter Agreement for the year 2005.

[Id. at ¶ 17].

On October 9, 2005, JPCC's parent company, JP, entered into a

definitive merger agreement with Lincoln National Corporation ("Lincoln

National").  [Id. at ¶ 18].  The Plan of Merger contemplated that JP would

be merged into a holding company, denominated as "Merger Sub." [Id.].

The Plan of Merger anticipated that both Jefferson-Pilot

Communications/WBTV, Inc. and WCSC, Inc. would retain their 100%

ownership interests in their respective television stations and would remain

the licensees for the stations. [Id. at ¶ 19]. The Plan of Merger also

anticipated that JPCC would retain its 100% share of these two

subsidiaries and its interest in the stations, and that the parent company,

JP, would transfer its ownership interest in JPCC to Merger Sub. [Id.].

In January 2006, JP and Lincoln National determined that "Merger

Sub" would be a holding company named Lincoln JP Holdings, LP. [Id. at

¶ 20]. The companies contemplated that Lincoln National would have a

99.9% interest in Lincoln JP Holdings LP as a limited partner, and another

entity, Lincoln JP Company, LLC (a wholly-owned subsidiary of Lincoln

National), would have a 0.1% interest in Lincoln JP Holdings, LP as a

general partner. [Id.].

By letter dated December 14, 2005, JPCC notified CBS of the

contemplated merger between JP and Lincoln National, in accordance with

Section 3(b) of the Affiliation Agreements. [Dec. 14, 2005 Letter, Doc. 21-

17, Ex. R to Gustafsson Decl.]. In February 2006, CBS notified Jefferson-

Pilot Communications/WBTV, Inc. and WCSC, Inc., that it did not oppose the merger. [Feb. 28, 2006 Letter, Doc. 21-19, Ex. T to Gustafsson Decl.].

The merger was completed on April 3, 2006. JP was merged with and into Lincoln JP Holdings, LP, and JP transferred its indirect control of the licensees for WBTV and WCSC to Lincoln National. [Gustafsson Decl., Doc. 21 at ¶ 21]. JPCC, which was now a wholly owned subsidiary of Lincoln JP Holdings, LP, continued to retain its 100% interest in the stations. [Id.]. The licensees, WCSC, Inc. and Jefferson-Pilot Communications/WBTV, Inc., also retained their interests in the television stations and continued to operate them. [Id.]. The merger did not result in any changes to JPCC's business location, officers, or assets. [Id. at ¶ 32].

Immediately following the merger, JPCC changed its name to Lincoln Financial Media Company ("Lincoln Financial"), which is the Plaintiff in this case. [Id., Articles of Amendment, Doc. 21-13, Ex. N to Gustafsson Decl.]. Jefferson-Pilot Communications/WBTV, Inc. changed its name to WBTV, Inc. [Articles of Amendment, Doc. 21-14, Ex. O to Gustafsson Decl.].

In May 2006, Plaintiff Lincoln Financial demanded CBS make a $400,000 promotional contribution pursuant to Paragraph 5 of the Letter Agreement. [Gustafsson Decl., Doc. 21 at ¶ 30]. By return letter dated

January 4, 2007, CBS refused Lincoln Financial's demand, citing the merger between JP and Lincoln National and the consequent transfer of "any interest" in the stations. [Jan. 4, 2007 Letter, Doc. 21-20, Ex. U to Gustafsson Decl.]. CBS also refused to make any promotional contribution for 2007. [Gustafsson Decl., Doc. 21 at 33].

On March 1, 2007, the holding companies, Lincoln JP Holdings, LP and Lincoln JP Company, LLC, were eliminated, and Lincoln National became the parent company of Plaintiff Lincoln Financial. [Gustafsson Decl., Doc. 21 at ¶ 32]. This change did not result in any operational changes at WBTV or WCSC; the stations continue to broadcast and promote CBS network programming. [Id.].

## IV.  Analysis

Though the facts are complex, the legal issue before the Court is straight forward. Does the purchase of the parent corporation of JPCC nullify the 1996 letter agreement by operation of the "transfer of interest" provision?

As a threshold matter, the Court must determine the law of which state is applicable to the Letter Agreement at issue. Lincoln Financial argues that North Carolina law is applicable because the Letter Agreement

was formed in North Carolina. [Plaintiff's Reply Brief, Doc. 27 at 3]. CBS argues, on the other hand, that New York law should apply, as the Letter Agreement was incorporated into the Affiliation Agreements, which both contain a choice of law provision selecting New York law as the governing authority. [Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Cross-Motion for Summary Judgment, Doc. 24 at 6].

While the parties disagree on which state's law is applicable, both parties do agree that there is no substantive difference between North Carolina and New York law where the interpretation of contracts is concerned. [Plaintiff's Reply Brief, Doc. 27 at 3; Defendant's Memorandum in Opposition, Doc. 24 at 6 n.3]. The same basic principles of contract interpretation are applicable. In interpreting a contract, the Court must examine the language of the contract to ascertain the parties' intent. Lane v. Scarborough, 284 N.C. 407, 409-10, 200 S.E.2d 622, 624 (1973); Kula v. State Farm Fire and Cas. Co., 212 A.D.2d 16, 19, 628 N.Y.S.2d 988 (N.Y. App. Div. 1995). Where the language of the contract is clear and unambiguous, interpretation of a contract is a question of law for the Court. Lane, 284 N.C. at 410, 200 S.E.2d at 624; Tigue v. Comm. Life Ins. Co.,

219 A.D.2d 820, 821, 631 N.Y.S.2d 974 (N.Y. App. Div. 1995).  An

ambiguity exists where the terms of the contract are reasonably

susceptible to more than one meaning.  <u>Glover v. First Union Nat'l Bank</u>,

109 N.C. App. 451, 456, 428 S.E.2d 206, 209 (1993); <u>New York City Off-</u>

<u>Track Betting Corp. v. Safe Factory Outlet, Inc.</u>, 28 A.D.3d 175, 177, 809

N.Y.S.2d 70 (N.Y. App. Div. 2006).

In the present case, the language of the parties' contract is

unambiguous.  Paragraph 5 of the Letter Agreement provides that CBS's

obligation to make an annual promotional contribution of $400,000 shall

cease "in the event that Jefferson-Pilot assigns or transfers any interest in

either Station [WBTV or WCSC-TV]."  [Letter Agreement, Doc. 22-5, Ex. D

to Gustafsson Decl., Doc. 21 at ¶5].  The term "Jefferson-Pilot" is explicitly

defined as "Jefferson-Pilot Comunications Company" (JPCC) in the Letter

Agreement.  [Letter Agreement, Doc. 22-5, Ex. D to Gustafsson Decl. at 1].

Thus, the plain language of this provision applies only to transfers or

assignments of interests in the stations by JPCC.  The parties are in

agreement with this interpretation.  [Plaintiff's Brief in Support of Motion for

Summary Judgment, Doc. 19, at 8; Defendant's Memorandum in

Opposition, Doc. 24 at 7].

14

CBS argues that upon the merger of JP and Lincoln National, "Plaintiff assumed control and ownership of JPCC and its subsidiaries," and that, consequently, JPCC ceased to exist. [Defendant's Memorandum in Opposition, Doc. 24 at 3-4]. CBS argues that the merger between JP and Lincoln National "and the consequent transfer of '**any interest**' in the stations from JPCC to the Plaintiff" justifies its refusal to make the annual $400,000 promotional payment to the Plaintiff pursuant to Paragraph 5 of the Letter Agreement. [Id. at 4] (emphasis in original).

The undisputed facts conclusively establish, however, that JPCC did *not* "cease to exist" after the merger of its parent company, Jefferson-Pilot Corporation (JP), with Lincoln National. [Gustafsson Decl., Doc. 21 at ¶ 24].

In April 2006, following the JP/Lincoln National merger, JPCC continued to exist as a subsidiary of the Merger Sub. JPCC then filed an Amendment to its Articles of Incorporation to reflect its *name change* to Lincoln Financial Media Company. [North Carolina Secretary of State Records, Gustafsson Decl., Doc. 21, Ex. W; Declaration of C. Suzanne Womack ("Womack Decl."), Doc. 20 at ¶ 6]. The company's existence proceeded under the same charter it has held since 1928. [Gustafsson

Decl., Doc. 21 at ¶ 34, Ex. W].  The undisputed facts further establish that the entity known as Lincoln Financial Media Company (Plaintiff) did not exist as a division or subsidiary of Lincoln National prior to the merger, nor was it created out of the merger.  [Womack Decl. at ¶ 5].  Rather, Lincoln Financial Media Company was merely the new name selected for the entity known as JPCC Company prior to the merger.  [Id.].

While CBS argues "upon information and belief" that JPCC was dissolved or otherwise ceased to exist as a result of the merger [Defendant's Memorandum in Opposition, Doc. 24 at 3-4], CBS has not presented a forecast of evidence to support its argument.  At this stage, CBS may not simply rest upon its allegations based on "information and belief," but rather must affirmatively set forth, by affidavits or otherwise, "specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2). This CBS has failed to do.

The undisputed facts further demonstrate that the 2006 merger did not result in a transfer or assignment of any of JPCC's interest in the stations.  The assignment or transfer of control of a broadcast station's license requires the approval of the FCC:

> No . . . station license, or any rights thereunder,
> shall be transferred, assigned, or disposed of in any

> manner, voluntarily or involuntarily, directly or
> indirectly, or by transfer of control of any
> corporation holding such permit or license, to any
> person except upon application to the Commission
> and upon finding by the Commission that the public
> interest, convenience, and necessity will be served
> thereby.

47 U.S.C. § 310(d).  This statutory provision applies to any transfer of control or disposition of any rights in an FCC license, whether that control or those rights are held directly or indirectly by the transferor. See Rochester Tel. Corp. v. United States, 23 F. Supp. 634, 636 (W.D.N.Y. 1938), aff'd, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147 (1939).

Any company exercising control over a licensee – whether directly or indirectly – must file an annual ownership report with the FCC.  47 C.F.R § 73.3615.  Where, as here, a broadcast license is part of a vertical ownership chain, each entity in the ownership chain, with the exception of those holding only nominal interests in their subsidiaries, is deemed to exercise control over the licensee.  47 C.F.R. § 73.3615(a)(3)(iv)(B). Where the vertical chain of ownership includes a series of wholly-owned subsidiaries, each parent company and/or subsidiary is deemed to exercise control over the licensee "regardless of its position in the vertical ownership chain."  Id.  A "transfer of control" can occur from changes made

in the organization, officers, directors, or stockholders of any of the entities in a vertical ownership chain containing a licensee. 47 C.F.R. § 73.3615(c).

In the present case, JPCC directly controlled and had a 100% interest as the single shareholder of both license-holders. JP, as the sole shareholder of JPCC, indirectly controlled and had a separate 100% interest in the license-holders as well. <u>See</u> 47 C.F.R. § 73.3555 n.2(c). Consequently, both entities held separate controlling interests (JPCC directly and JP indirectly), which required registration of both entities' interests with the FCC pursuant to 47 C.F.R. § 73.3615. Further, the FCC's consent was required for JP to transfer indirect control of the license-holders to Lincoln National. <u>See</u> 47 U.S.C. § 310(d).

This transfer of indirect control from JP to Lincoln National, however, did not affect the interest of JPCC or its subsidiaries in the television stations. Because JPCC and its subsidiaries did not assign or transfer any of their interest in the stations as a result of the merger, no application was filed with the FCC regarding the interests of these entities. [Gustafsson Decl., Doc. 21 at ¶ 26].

A comparison of the 2005 and 2006 Ownership Reports filed with the FCC demonstrates that JPCC's assets and interests were unaffected by the merger. [Ownership Reports, Second Declaration of Nelle E. Gustafsson, Doc. 28, Exs. A-G]. These Ownership Reports show that before the merger, JPCC directly controlled and had a 100% interest as the single shareholder of each of the license-holders. [Id.]. Following the JP and Lincoln National merger, JPCC preserved its existing ownership interest and control over the stations. [Id.]. Furthermore, the merger did not result in any change in the business location, officers or assets of JPCC. [Gustafsson Decl., Doc. 21 at ¶¶ 24, 32].

Boiled to their essence, the facts are that the Plaintiff was once a subsidiary of JP. When JP was purchased by Lincoln National, the Plaintiff became a subsidiary of Lincoln National. The Plaintiff's name was then changed from JPCC to Lincoln Financial. As a result of the merger, JP transferred everything it owned. The Plaintiff, however, neither transferred nor assigned anything as a result of the merger; it simply changed its name.

The relevant sentence of the Letter Agreement provides that CBS's obligation to make the annual promotional payment will cease "in the event

that [JPCC] assigns or transfers any interest in either Station." [Letter Agreement, Doc. 22-5, Ex. D to Gustafsson Decl. at ¶ 5]. It is undisputed that JPCC assigned nothing and transferred nothing as a result of its parent company's merger. If the agreement read that CBS's obligation to make the annual promotional payment ceased upon the "*any* assignment or transfer of *any interest* in either Station," CBS's arguments would be well-taken. That, however, is not the agreement the parties negotiated. It is limited to assignments and transfers by JPCC only.[1]

CBS has failed to present a forecast of evidence that JP's merger with Lincoln National resulted in the assignment or transfer of any of JPCC's interest in WBTV or WCSC-TV. The undisputed facts presented by Lincoln Financial establish that JPCC did not assign or transfer any of its interests in these stations as a result of the merger. Based upon the undisputed facts and the unambiguous language of the Letter Agreement,

---

[1]JPCC did transfer the assets, broadcast license, and Affiliation Agreement for WBTV to its subsidiary, Jefferson-Pilot Communications/WBTV, Inc. in 2002. [Gustafsson Decl., Doc. 21 at ¶ 11]. CBS did not object to this assignment and continued to make the annual promotional payments as required by the Letter Agreement. [Id. at ¶¶ 11, 15-17]. CBS does not argue that this transfer of JPCC's interest to Jefferson-Pilot Communications/WBTV, Inc. constituted a "transfer of interest" nullifying the 1996 Letter Agreement. Indeed, any such argument would likely be deemed waived by CBS's approval of the formation of the subsidiary and its conduct in continuing to make the annual promotional payments after this transfer of interest.

the Court concludes that CBS remained obligated to make the annual promotional payments required by Paragraph 5 of the Letter Agreement.

**O R D E R**

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 18] on its request for a declaratory judgment is **GRANTED**, and **IT IS HEREBY DECLARED** that Paragraph 5 of the April 23, 1996 Letter Agreement remains in full force and effect and that the Defendant CBS Broadcasting Inc. is obligated to continue making annual promotional payments of Four Hundred Thousand and 00/100 Dollars ($400,000.00) to the Plaintiff Lincoln Financial Media Company pursuant to that provision.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 18] on its claim for breach of contract is **GRANTED.**

**IT IS FURTHER ORDERED** that the parties shall report to the Court within ten (10) days from the entry of this Order whether Plaintiff claims any other damages were caused by Defendant's breach in addition to the $800,000 lost by Defendant's failure to pay the annual promotional payments for 2006 and 2007, plus interest.  If no further damages are

sought, Judgment will enter forthwith.  If any further damages are sought, the parties are advised that this matter will be calendared for trial as to the issue of damages in the June 16, 2008 mixed term.

**IT IS FURTHER ORDERED** that the Defendant's Cross-Motion for Summary Judgment [Doc. 23] is **DENIED**.

**IT IS SO ORDERED.**

Signed: March 24, 2008

Martin Reidinger
United States District Judge